MEYER DELISKY, Respondent, *v.* JANE LEONARD and Others, Appellants.

First Department, December 5, 1919.

Contracts — action to recover from tenants value of extra work and materials furnished in alteration of building — sufficiency of evidence to show special promise by defendants — compromise verdict — instructions — failure to read to jury granted requests to charge.

In an action by a contractor against tenants to recover the reasonable value of extra work, labor and services and materials furnished in connection with the alteration of the leased premises, and not embraced in the plans and specifications, upon the ground of defendants' special promise to pay therefor, *held*, that a verdict in favor of the plaintiff was against the weight of the evidence.

Where in such an action neither the doing of the work nor its value is disputed, and the only issue is whether the defendants ever made a contract to pay for the work, a verdict for less than the amount sued for is plainly a compromise one.

It is reversible error for the court to fail to read to the jury certain written requests to charge which it had granted, where the charge of the court as delivered did not cover the points contained in the granted requests.

APPEAL by the defendants, Jane Leonard and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of January, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of January, 1919, denying defendants' motion for a new trial made upon the minutes.

*Edward A. Alexander* of counsel [*Frank Weinstein* with him on the brief], for the appellants.

*Simon Rasch* of counsel [*Jacob B. Eiseman* with him on the brief], for the respondent.

DOWLING, J.:

Plaintiff is a general contractor. Defendants are the lessees of the premises 106 East Fifty-seventh street, under a written lease dated July 6, 1915, made by Harry A. Taylor to them for the term of five years from September 1, 1915, at the yearly rental of $6,500, payable in equal monthly payments in advance. The lease contained a clause that the landlord agreed to make prior to September 1, 1915, such alterations and repairs as were necessary to adapt the premises for the use to which they were to be put — the manufacture and sale of ladies' apparel — and to expend therefor the sum of $7,000; such alterations and repairs were to be agreed upon in writing by the landlord and M. Delisky within fifteen days, and should they cost less than $7,000, a reduction equal to five per cent of the difference between that sum and the actual cost should be allowed on the annual rent; while if they cost more than $7,000, the tenant agreed to repay to the landlord one-fifth of the excess each year, with interest. Plaintiff about July 2 or 3, 1915, had learned from a person in the iron business that it was proposed to alter this building and he had secured an introduction to the defendant Julian Leonard, with whom he went through the building. Leonard showed him certain items of work he wanted done to convert it into a ladies' tailoring establishment, such as he had formerly conducted in Fifty-eighth street. Delisky prepared plans and specifications for the work at a cost of $4,575 and submitted them to Leonard. Several days later, plaintiff saw Leonard

and was then told that defendants were taking the building under a lease from Taylor, who was willing to spend $7,000 to make the alterations and part of the money could go into work that Leonard felt he would order during the job, such as special wall paper in the show room. Thereafter the plans and specifications were submitted to Taylor and the price was fixed at $6,875, which as agreed upon by plaintiff and Leonard was to include the work originally proposed to be done by plaintiff at the price of $4,575, leaving a margin of $2,300 for such other and special work as Leonard might from time to time order. On July 10, 1915, Julian Leonard signed a paper as follows: " I hereby authorize Mr. M. Delisky, 505 East 76th St., to make the alteration to premises 106 East 57th St. as per plan and specification filed by the said M. Delisky amount $6875." On the same day the landlord sent plaintiff the following letter:

" NEW YORK, *July* 10*th*, 1915.

" M. DELISKY, Esq.,

" 505 East 76th Street,

" New York City:

" DEAR SIR.— Under a certain lease between myself and the firm of Jane & Andre, I am to do certain work in and about the alteration and repair of 106 East 57th Street. I am prepared to give you the contract for such work and I hereby authorize you to start in upon such work pending the definite ascertainment of the work to be done.

" It is my understanding that you are to submit to me within ten days hereof complete specifications and complete plans, both of which are to be subject to the approval of my representative. Upon the approval by us of said plans and specifications, we are to enter into a firm uniform contract which shall, among other things, provide that the work shall be done under the supervision of a person whom I may select and, further, that payments shall be made as follows: 75% of the value of the work done each week during the progress of the work, and the balance, 25%, upon acceptance and approval of the work by the Department of Buildings, Department of Labor, and other Municipal Departments having jurisdiction of such matters, and the approval of the

owner.   It is our understanding also that you are not to receive any payment until the plans are approved by the proper Departments.

"Will you please signify your acceptance of the above by subscribing this letter.  This letter shall be effective only if and when the lease above referred to shall be executed by the parties.                    Very truly yours,
" Accepted                         [signed] H. A. TAYLOR.
      " M. DELISKY."

At this time the last sheet of the specifications showing a total cost of $4,575 had been removed and another substituted showing a total cost of $6,875.

Contemporaneously with these letters, plaintiff had sent defendants the following letter:

                                        " *July 9th,* 1915.
" Mmes. JANE & ANDRE,
           " 46 E. 60th St.,
                " New York City:
" DEAR MADAMES.— It is clearly understood by me that the difference between the amount of $4,575.00 Forty-five hundred seventy-five dollars, being the contracted cost entered into between myself and Mr. L. E. Taylor, for alteration to the building known as No. 106 E. 57th Street, Borough of Manhattan, New York City, and the amount $6875.00, Sixty-eight hundred seventy-five dollars, which the owner of the said building is to pay me for alteration, decoration, etc., of the building known as No. 106 E. 57th Street, Borough of Manhattan, said difference being in the amount of $2300.00, Twenty-three hundred dollars, is to be applied to painting, decorating, furnishing, or other purposes, as may be deemed necessary by Mr. Julian Leonard acting as attorney for yourselves, and I herewith bind myself to the wishes of Mr. Julian Leonard in connection with the disbursement of the aforesaid sum of $2300.00, Twenty-three hundred dollars.
                              " Yours truly,
                                 " M. DELISKY."

Work was begun under the plan and specifications, but the landlord's representative made certain changes in the original

plans and specifications, which were embodied in a new or second set of plans and specifications, which plaintiff claims would have cost a great deal more than was originally contemplated. Based upon this second set, a written contract was entered into between plaintiff and Taylor on July 23, 1915, for the doing of the work embraced therein at the price of $6,875.

Plaintiff claims that at some time between July 10 and 23, 1915, before the contract was signed, he told Leonard that the landlord's representative was making changes which would cost a lot of money and he could not do the job for the amount he had originally agreed with Leonard to do it for ($4,575), and that he would have to be paid for the extra work outside of the written contract. Plaintiff testifies that Leonard replied: " Never mind, go ahead and do your job, * * * you will be paid for everything." Plaintiff then said: " ' Now, remember, Mr. Leonard,' I said, ' that any agreement I entered into with you before,' I said, ' does not hold good, for the simple reason that I will charge Mr. Taylor right now and then for everything that there is a difference between my original specifications and the specifications that Mr. Strange wants; I will stop my work and they will have to pay me for it, and in the end you will have to pay for it.' Q. What did he say? A. So he said: ' Go ahead with your work.' He smiled at me and said: ' Go ahead; it is all right, do your work; everything will be all right.' He said: ' You will be paid for everything that you do on the job.' By the Court: Q. Did he say he would pay it? A. As to the changes between the two plans? Q. Yes? A. He said now — the conversation ran that I said to him the agreement that I had entered into with him to do some work at his order could not be done if I were to follow out the plans and specifications as Strange wanted it; I would have to charge now for the work; that either I stopped work and charged Mr. Taylor with this extra work or that any extra work that Mr. Leonard would order, he would have to pay for; that I could not incorporate it in this contract. * * * By the Court: Q. What did Mr. Leonard say? A. Mr. Leonard said: ' I will pay you for all the work you do on this building.' He said: ' I am good for it.' He waved his hand and said: ' You know I am good for it.' "

Leonard denied that any such conversation took place between himself and plaintiff. The paper dated July 9, 1915, and signed by plaintiff was never returned to plaintiff nor does he appear ever 'to have demanded the same. Under that paper, the sum of $2,300 out of the $6,875 estimated cost was to be applied to such purposes as Leonard might direct.

With this paper still in existence, in Leonard's possession and never revoked or affected by any writing between plaintiff and defendants, plaintiff proceeded with the work upon the premises to their completion, and received from Taylor contracts for two additional specified items of work.

Plaintiff was paid in full for his work by Taylor and thereupon executed the following release:

*"May 29th,* 1917.

" The undersigned, M. Delisky, acknowledges receipt from Harry A. Taylor, of the sum of Three hundred and eighty dollars ($380) which is the final payment on account of, and is in full settlement for, all work done by the undersigned in, upon or in connection with the premises No. 106 East 57th Street, Borough of Manhattan, City of New York. In consideration of the receipt of the foregoing sum,. the undersigned hereby releases and forever discharges said Harry A. Taylor, his heirs, executors and administrators, of and from any and all claims and demands, contracts, controversies, agreements and damages which against Harry A. Taylor, the undersigned ever had, now has or which his heirs, executors or administrators hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents, and particularly upon or by reason of the three several contracts dated July 23, 1915, August 23, 1915, and January 19, 1916, and upon or by reason of any work done or material installed in the premises No. 106 East 57th Street, Borough of Manhattan, City of New York, and upon or by reason of anything connected with or arising out of said contracts or said work and material.

" The undersigned hereby agrees to indemnify and save said Harry A. Taylor harmless of and from any liability, cost, charge or expense which may accrue to Harry A. Taylor by

reason of any omission or failure to install work or material agreed to be performed or installed by the undersigned, under or by virtue of the above recited contracts.

"MEYER DELISKY [L. S.]

" In the presence of:

" JACOB ZUCKER."

This action was brought to recover the reasonable value of the work, labor and services and materials furnished in connection with the alteration of the premises in question, not embraced in the second set of plans and specifications, upon the ground of defendants' special promise to pay therefor. The amount sued for was $2,550 with interest. An itemized list of plaintiff's claim was in evidence and the value of the work done and materials furnished was testified to by plaintiff and his foreman carpenter. Neither the doing of the work nor its value was disputed by defendants. They limited themselves to a denial that the alleged agreement with them was ever made.

Plaintiff admitted that he only agreed to the making of a contract based on the second set of plans and specifications because of defendants' alleged promise to pay for all extra work, and that if they had not so promised he would have lived up to the original agreement whereby the extra work to the amount of $2,300 was to be done under Leonard's orders, without charge to him.

The jury brought in a verdict for plaintiff in the sum of $1,180, which they stated included interest. The amount of plaintiff's claim was $2,550, with $357 interest. The verdict is plainly a compromise one. There is no theory of the evidence upon which it can be sustained, nor can it possibly be figured out how the sum was arrived at. There was no serious contest as to the amount of the bill for extra work. The issue was whether defendants ever made any promise to pay for the work in suit. Upon that issue we think that the finding of the jury that such a promise was made is against the weight of the evidence. The plaintiff's case rests upon his testimony, with certain testimony by his foreman Silverman as to a promise by Julian Leonard to pay for certain specific work when ordered in his presence, but not amounting to corroboration of the general promise testified to by plaintiff. As against this

there is the denial of Julian Leonard that such a promise ever was given, with the unexplained fact that the letter of plaintiff of July 9, 1915, whereby he agreed that defendants should be entitled to order extra work up to $2,300 without being obliged to pay therefor, remained in defendants' possession and was never returned to, or demanded by, plaintiff. It is difficult to believe, without some reason being given therefor, that plaintiff ever allowed this paper to be retained by defendants, if the alleged promise was made. Plaintiff knew that its effect was to relieve defendants from liability for extra work up to $2,300. If he was undertaking, under his second set of plans and specifications to do work for Taylor up to the full contract amount of $6,875, and defendants were to pay for all work done outside those plans, it is unreasonable to believe that he would have refrained from demanding back this paper which he had given for the very purpose of relieving defendants from liability. The extra work amounted to $2,550, but little in excess of the $2,300 originally contemplated. It does not clearly appear how much the work finally required to be done for Taylor exceeded in cost that originally specified to be done, or that it actually footed up a total equal to the contract price. The release to Taylor from plaintiff of course could not operate as a release to defendants, but it was of value because of the inference to be drawn from its contents. Defendants claim that the fair inference to be drawn from it is that plaintiff had no claim save against Taylor, and knew it, and, therefore, released him for all work done on the premises. Certainly the first sentence thereof is more consistent with defendants' claim than with plaintiff's. We think plaintiff has failed to fairly prove the agreement sued on. The finding that defendants by Julian Leonard made an express promise to pay for this extra work is, therefore, reversed as against the weight of the evidence.

Furthermore, the learned trial court erred in not charging defendants' requests to charge numbered 17, 18, 19, 20 and 21. These were submitted to the court in writing and the court indicated its action upon the margin of the paper submitted and it was handed to the official stenographer. The court marked these five requests " granted," but they were

never read to the jury, nor did the charge of the court as delivered cover the points on which defendants requested that the jury should be instructed. Exception was properly taken to the failure to charge these requests, and this in itself would constitute reversible error.

The judgment and order appealed from will, therefore, be reversed and a new trial ordered, with costs to appellants to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.