# AMES *v.* WESTERN PACIFIC

## No. 2649

August 5, 1924.                    227 Pac. 1009.

1. MASTER AND SERVANT—CARE REQUIRED OF EMPLOYER.

   It is employer's duty to see that ordinary care is exercised to the end that place of work and tools and appliances may be safe.

2. RAILROADS—FINDING OF RAILROAD'S NEGLIGENCE IN FAILING TO PROVIDE SAFE PLACE SUSTAINED.

   In action under federal employers' liability act, as amended by act Cong. April 5, 1910 (U. S. Comp. St. secs. 8657–8665), for death of employee injured when jacked up tender placed over pit fell on him, evidence *held* to sustain finding of negligence in failing to provide safe place to work.

3. NEGLIGENCE—COMPARATIVE NEGLIGENCE DOCTRINE UNDER FEDERAL EMPLOYERS' LIABILITY ACT STATED.

   Under federal employers' liability act, as amended by act Cong. April 5, 1910 (U. S. Comp. St. secs. 8657–8665), damages recoverable bear same relation to full amount as negligence attributable to railroad bears to entire negligence attributable to both railroad and employee.

4. APPEAL AND ERROR—JURY PRESUMED TO HAVE OBEYED INSTRUCTION TO DIMINISH DAMAGES IN PROPORTION TO CONTRIBUTORY NEGLIGENCE.

   In action under federal employers' liability act, as amended by act of Cong. April 5, 1910 (U. S. Comp. St. secs. 8657–8665), for death, where jury found deceased's negligence contributed to accident by one-half, and they were instructed to diminish damages accordingly, and verdict of $9,125 does not appear excessive, appellate court must assume that jury obeyed instruction, in absence of showing to contrary.

5. MASTER AND SERVANT—ONLY ORDINARY RISKS OF EMPLOYMENT ASSUMED.

   Dangers, in respect of which there can be no recovery for injuries by virtue of doctrine of assumption of risk, include but do not extend beyond ordinary risks of employment, or such as are incident thereto.

6. MASTER AND SERVANT—RISK OF EMPLOYER'S FAILURE TO PERFORM DUTY ASSUMED BY EMPLOYEE CONTINUING WORK WITH KNOWLEDGE.

   Employee does not assume risk of failure of employer to perform his primary duty, unless employee has actual or constructive knowledge of dereliction and of peril, and continues in employment without protest.

7. MASTER AND SERVANT—ASSUMPTION OF RISK HELD QUESTION OF FACT.

   Whether deceased assumed risk of defendant railroad's negligence in failing to provide safe place to work *held* a question of fact and dependent on whether he knew of unsafe foundation of roundhouse pit wall.

8. MASTER AND SERVANT—BURDEN OF SHOWING EMPLOYEE KNEW OF UNSAFE PLACE ON DEFENDANT.

In action under federal employers' liability act, as amended by act Cong. April 5, 1910 (U. S. Comp. St. secs. 8657–8665), for death of employee, burden of proving that deceased had actual or constructive knowledge of unsafe conditions surrounding place of work was on defendant pleading assumption of risk.

9. MASTER AND SERVANT—EMPLOYEE NOT OBLIGED TO INSPECT FOR LATENT DEFECTS.

Where deceased employee had no knowledge of latent defects in foundation wall of pit which constituted his place of work in repairing engines, he was not obliged to inspect wall for latent defects.

10. MASTER AND SERVANT—TESTIMONY OF PRIOR ACCIDENTS HELD INADMISSIBLE TO SHOW EMPLOYEE'S KNOWLEDGE OF UNSAFE PLACE OF WORK.

Where employee's death was caused when jack supporting engine tender fell by reason of defective foundation of pit wall, testimony that on prior occasions tenders raised by deceased fell from jacks, but from some cause other than defect in foundation, *held* properly excluded as irrelevant because not tending to warn deceased of defect.

See (1) 26 Cyc. p. 1098, n. 27; p. 1102, n. 34; p. 1177, n. 44, 46; p. 1204, n. 20; p. 1216, n. 65; p. 1225, n. 13, 14, 15; p. 1231, n. 36; p. 1414, n. 66; p. 1419, n. 84; p. 1438, n. 49; p. 1447, n. 93; p. 1478, n. 77. (4) 4 C. J. sec. 2717, p. 771, n. 78.

APPEAL from Fourth Judicial District Court, Elko County; *J. M. McNamara*, Judge.

Action by Mary L. Ames, as administratrix of the estate of Chester W. Ames, deceased, against the Western Pacific Railroad Company, a corporation. From an order denying a new trial, defendant appeals. **Affirmed.**

*Morley Griswold* and *Charles Henderson* of Counsel, for Appellant:

Evidence of other accidents is admissible to show knowledge and must result in some sort of warning. 1 Wigmore, sec. 301; E. T. Tel. Co. v. Jeffries, 154 S. W. 1112; 22 C. J. 753, note 90.

Verdict is excessive because jury failed to consider contributory negligence of decedent.

When manner of happening of accident is speculative,

verdict should be for defendant. Gregory's Admr. v. Director General, 242 S. W. 373; Day v. Cloke, 47 Nev. 75.

Testimony inherently improbable or contrary to natural course of conduct, no matter how vigorously asserted, will not create such conflict as to permit submission to jury where all reasonable probabilities are established by other side. Zibbell v. S. P. Co., 116 Pac. 513; 1 A. Rob. 248; O'Brien v. R. R. Co., 78 N. W. 1084; Blankman v. Vallejo, 15 Cal. 646.

Federal employers' liability act provides no recovery if decedent assumed risk. Section 4; Ford v. McAdoo, Dir. Genl., 131 N. E. 874.

Experienced workman should know danger of insufficient blocking. Ry. Co. v. Stacy, 189 S. W. 25; 15 Am. Dig. 2d, "Master & Servant."

Decedent assumed risk in choosing dangerous rather than safe place in which to work. P. R. R. Co. v. Nelson, 259 Fed. 156.

Distinction between assumed risk and contributory negligence fades when pursued to point where danger becomes obvious. 1 Roberts Liability of Carriers, 1006; S. P. Co. v. De La Cruz, 109 S. W. 929.

*Johnson & Mathews,* for Respondent:

It was defendant's duty to provide reasonably safe place for workmen. Roberts, 918. Plaintiff has right to assume that duty is performed. Cutler v. P. S. P. M. Co., 34 Nev. 56; 18 R. C. L. 595.

If offered testimony does not show knowledge of particular danger that overtook decedent, but merely knowledge of some danger, it does not show assumption of risk and is immaterial. 1 Wigmore, sec. 301; Mayer v. Detroit, etc., 105 N. W. 888.

Evidence of accident to another employee in another elevator is not admissible. Wise v. Ackerman, 25 Atl. 424. Nor of accident two years prior not in consequence of same defect. Woelfel Leather Co. v. Thomas, 68 Ill. App. 394. Conditions and circumstances must be substantially similar in each instance to show negligence.

Hochschultz v. Zinc Co., 33 Nev. 198; Flodin v. Lumber Co., 37 Nev. 294.

Where evidence is conflicting, verdict will not be disturbed if there is substantial evidence to support it. Gardner v. Gardner, 23 Nev. 215; Page v. Walser, 46 Nev. 390.

Employee is never held to have assumed risk unless he has knowledge, actual or imputed, and appreciates danger. Ry. Co. v. Horton, 233 U. S. 492; 18 R. C. L. 677.

Danger that overtook Ames arose from latent defect which it was not his duty to discover. 18 R. C. L. 595; Ry. Co. v. Atley, 241 U. S. 311.

There was no evidence of negligence in Ford v. McAdoo. Assumed risk was established and new trial ordered in S. P. Co. v. De La Cruz.

## OPINION

By the Court, DUCKER, J.:

Respondent is the widow of Chester W. Ames, deceased, and brought this action to recover damages for his death, resulting from personal injuries alleged to have been caused by the negligence of the appellant. In the answer the negligence charged was denied and the defense of contributory negligence and assumption of risks pleaded. The action was tried before a jury, and verdict and judgment rendered against appellant. From an order denying its motion for a new trial, this *appeal is taken.*

There are two causes of action set up in the complaint. At the conclusion of respondent's case appellant moved for a nonsuit and a directed verdict. The motion for a nonsuit was granted as to the second cause of action, and was denied as to the first cause of action, as was the motion for a directed verdict.

It is alleged in the complaint that appellant is a railroad corporation operating a line of railway as a common carrier engaged principally in interstate commerce; that it maintained at Elko, Nevada, a terminal

and a roundhouse with a dirt floor with divers stalls and pits therein, and a repair shop located adjacent to its main line and connected therewith by suitable tracks; that said roundhouse and repair shop were used for making repairs on its engines, tenders, and cars used by it in commerce between states; that on the 6th day of November, 1922, the said Chester W. Ames was, and for more than a year prior thereto had been, an employee of appellant, rendering service to it, at said Elko terminal, for wages and reward paid to him by it, and his duties under said employment consisted principally in repairing locomotive tenders and trucks and parts thereof, used behind locomotive engines for the carrying of fuel and water used in such locomotive engines; that said duties included the removal and replacing of wheels on the trucks of said tenders, and to do that it was necessary to raise the body of said tender off the trucks on which wheels were to be changed. Other allegations of the complaint and answer will be referred to as it becomes necessary in the course of this opinion.

It was while engaged in the duty last mentioned that Ames met his death. On the morning of the 6th of November, 1922, one of the appellant's locomotive engines and a tender had been placed over what is called pit No. 2 in the roundhouse, and Ames had been directed to change the front wheels on the rear truck under the tender. With the assistance of a helper he jacked up both sides of the rear end of the tender, removed the truck, rolled it back on the track which extended over the pit to the turntable, made the change of wheels on the truck, and rolled it back on the track to within 18 inches or 2 feet of the drawbar or coupling which projected from the tender, preparatory to replacing the truck beneath the tender. When he was placing a nut on a bolt of one of the wheels of the truck the tender fell, and the drawbar or coupling pinned the lower part of his body against the top of the wall of the pit, causing injuries from which he died a short time after his removal. It was about an hour and a half

from the time the tender was raised on the jacks until it fell.

Respondent contends that the accident was due to the negligence of the appellant in failing to provide a safe place for Ames to work. In this respect it is alleged in the complaint as follows:

"That said foundation, floor, and ground on one side of said pit, to wit, the southerly side, where it was then and there necessary for said Chester W. Ames to place one of the said jacks for the performance of said work, and where he did in fact place one of said jacks to raise said tender body, as aforesaid, was then and there in fact unsound, weak, soft, unsafe, and dangerous and said planks forming a part of said floor and foundation were then and there decayed and rotten, and the ground then and there forming a part of said foundation was then and there soft and insecure; that said foundation, floor, and ground being in said condition rendered said place where the said Chester W. Ames was required to perform said work, as aforesaid, unsafe and dangerous; that said unsafe and dangerous condition of said foundation, floor, and ground might easily and readily have been discovered by an inspection thereof; that said foundation, floor, and ground where the said Chester W. Ames was required to do said work was unsafe and dangerous was then and there well known to the defendant, or in the exercise of ordinary care might have been known to it."

These allegations were denied in the answer, and the issue thus raised constituted one of the main issues of the case.

1, 2. The complaint shows that action was brought under the federal employers' liability act of April 22, 1908, c. 149, 35 Stats. 65, as amended by act Cong. April 5, 1910, c. 143, 36 Stats. 291 (U. S. Comp. St. secs. 8657–8665), and the rule as to the duty of an employer in such cases is well settled. It is the duty of an employer to see that ordinary care and prudence are exercised to the end that the place in which the work to be performed, and the tools and appliances of

the work may be safe for the workmen. Seaboard Air
Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L.
Ed. 1062, L. R. A. 1915c, 1, Ann. Cas. 1915b, 475;
Hough v. Railway Co., 100 U. S. 213–217, 25 L. Ed. 612;
Washington & Georgetown Railroad Co. v. McDade,
135 U. S. 554–570, 10 Sup. Ct. 1044, 34 L. Ed. 235.
The circumstances of the accident were fully detailed
in evidence before the jury, and an attempt to restate
all of them here would extend this opinion unnecessarily.
That the pit where the accident occurred with the sur-
face over its walls was the place provided by appellant
for Ames to perform his work of removing and replac-
ing trucks under locomotives, tenders, and cars, is con-
ceded; that on account of the great weight of such
locomotives, tenders, and cars to avoid the danger of their
falling when jacked up, it was necessary to have a
strong and solid foundation along the sides of such pits
on which to place the jacks to raise them, is not denied;
that Ames, in the course of his employment had often
performed the same character of work at this place
was proved; that the tender was placed there by
employees of the appellant other than Ames is not
denied; and that at the time he placed the jacks to
raise the body of the tender, the foundation, floor, and
ground on the sides of the pit where the jacks were
placed appeared to be firm, sound, and strong and safe
for the work, is not denied. The evidence concerning
the construction of the pit does not differ materially
from the description given in the complaint, which is
substantially as follows:

"* * * About 65 feet long, and about 3 feet deep,
and about 4 feet wide; and the side walls of the pit
were constructed of cement, concrete, or other firm and
solid substance about 26 inches in thickness. Short rail-
road ties about 26 inches long and about 6 inches in
diameter were on top of said side walls about 18 inches
apart and at right angles to the pit. The rails forming
the track rested on these ties, near the pit ends of the
ties, on either side of the pit, near the edge thereof
and extended the whole length of the pit and beyond.

Next to the rails and on the outer side thereof, along the pit and over the ties as they extended out from the pit, was a covering or floor of planks about 20 inches wide, consisting of planks 2 inches or more in thickness, extending lengthwise along either side of the pit, with shoring on top of said ties upon which said planks rested, that brought the top of the plank covering or floor about level with the top of the rails. On the outer side of the pit walls was dirt and earth that formed the general floor of the roundhouse. The dirt floor near and around the pit was on a level with the top of the rails, and to some extent obscured the covering or floor of planks. The bottom of the pit and the surface of its inside walls were cement."

The evidence shows that the walls and bottom of the pit were of concrete, and that the ties were set down in the concrete, so that the top of the concrete wall was level with the top of the ties; that there were 2 or 3 inches of hard dirt or cinders on top of the planks running parallel with the rail.

It appears that the tender was attached to a locomotive facing west in the roundhouse, and that the tender fell to the left or south. Respondent's evidence shows that the tender was jacked up in the customary way by the use of a jack on each side near the rear end, with the jacks set as near the tender as could be and permit the truck to be rolled from under it. It shows that the place where the jacks were set appeared to be solid and safe, and that after the accident there was a hole where the jack on the left-hand side had been placed; that it was an irregular shaped hole about 14 or 18 inches wide and extending down 6 or 8 inches to the concrete; that there was a crack in the outside plank which ran up to the hole. From this hole a piece of board about 11 inches long and 4 inches wide was taken and introduced in evidence. It appears among the exhibits in the case and is badly decomposed.

We have stated very generally the character of respondent's evidence, which we think is sufficient to

support the finding of the jury as to appellant's negligence.

If the plank was not in the rotten condition as shown, it would have been easy enough for appellant to have produced it before the jury. It is unnecessary to detail appellant's evidence. Generally it was directed towards proving that, even though the jack had sunk down to a depth of four inches, the tender would not have fallen, and that Ames did not exercise ordinary care in using proper blocking beneath and on top of the jack. Giving this evidence its utmost effect, it could raise nothing more than a conflict of evidence, as to the proximate cause of the accident.

3, 4. It is contended that the verdict was excessive, first, because the jury failed to consider Ames' contributory negligence, and, second, because there was no evidence of negligence of the appellant. The second contention has already been disposed of. In respect to his contributory negligence, it is urged that he was so negligent in the manner in which he jacked up the tender by using insufficient blocking, and in choosing an unsafe place to work instead of a safe place. The facts show, and counsel for respondent concede, that Ames was negligent in working on the nut or bolt on the wheel of the truck so near the tender. It appears that he could have stopped the truck much further from the tender and could have been out of danger when it fell. But it appears that the jury did take into consideration his contributory negligence. This they had the right to do under the instructions of the court in a case of this kind. The rule of comparative negligence in actions under the employers' liability act is thus stated in 18 R. C. L. sec. 284, pp. 828, 829:

"While the federal employers' liability act provides, as has been noted, that contributory negligence shall not bar a recovery by employee of interstate railroads. it permits the railroad company to prove contributory negligence in diminution of damages, unless the company has been guilty of a breach of statutory duty, in which case, according to the express terms of the act,

it cannot rely upon contributory negligence for any purpose. It thus appears that the federal act establishes the old doctrine of comparative negligence. Contributory negligence is still a factor in every case, but it has the effect only to diminish the amount of recovery. Under the statute it is not a question of majority of negligence, but rather one of proportion; and the damages are to be diminished in proportion to the amount of negligence attributed to the negligent employee, as compared with the combined negligence of him and the employer. Or, as has been said by the supreme court, the damages recoverable bear 'the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.' "

The jury returned a verdict for the respondent in the sum of $9,125, whereupon the court submitted a request for special findings, in which were the following questions: Question No. 1: Was the deceased, Chester W. Ames, guilty of contributory negligence at the time of the accident? Question No. 2: If you should find that Chester W. Ames was guilty of negligence at the time of the accident, state in what proportion such negligence contributed to the proximate cause of the injury; that is, by one-fourth, by one-half, or any other fraction? To the first question the jury returned the answer, Yes, and to the second question the answer was, One-half.

Appellant contends that these facts show that the jury arrived at their general verdict without taking into consideration Ames' contributory negligence, and that the amount of the verdict should have been reduced one-half by the trial court; that the verdict is excessive to this extent. We cannot agree with this contention. Before the case was submitted to the jury the court, at appellant's request, had fully instructed the court on this point, in the following instruction:

"The federal employers' liability act under which this action was brought and which is controlling here, prescribes that where an employee has himself been guilty

of contributory negligence, 'the damages shall by the jury be diminished in proportion to the amount of negligence attributable to such employee,' and I say to you as a matter of law, you must determine what the proportion is. If Ames' negligence, if you find that he was negligent, contributed to or caused the accident resulting in his death, to the extent say, of one-half of the entire negligence, then the plaintiff's damages would be reduced by one-half; if to the extent of two-thirds, then her damages should be reduced by two-thirds; and as I have already said, if Ames' negligence, if you find he was negligent, was alone the cause of the accident, then of course, that would wipe out the damages and your verdict would be in favor of the defendant."

Nothing appearing to the contrary, and as the amount of the verdict in view of the evidence does not appear excessive, we must assume that the jury in arriving at its general verdict obeyed this instruction.

5-9. Appellant contends that respondent cannot recover, for the reason that Ames assumed the risk of his employment. It may be stated as a general rule that—

The dangers in respect of which there can be no recovery for injuries by virtue of the doctrine of assumption of risk include, but according to the generally accepted statement, do not extend beyond the ordinary risks of the employment or such as are incident thereto." 18 R. C. L. 676, and cases cited in note 12.

"And the ordinary risks incident to the service," says the same authority, "are those perils of which the employees have notice or which are patent and obvious to them." Id. pp. 676–677, and cases cited in note 13.

But there are other risks which an employee does not assume unless he has knowledge of them or the circumstances are such as to charge him with such knowledge. Such risks may arise from the negligence of the employer. The distinction is clearly drawn and the rule well settled in Seaboard Air Line v. Horton, supra, p. 504 (34 Sup. Ct. 640). The court said:

"Some employments are necessarily fraught with

danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court."

The same principle is recognized and applied in state courts. In 18 R. C. L. sec. 168, pp. 677, 678, it is thus stated:

"It is generally asserted without qualification that the employee does not assume the risk of the employer's negligence, but just what conception is embodied by this expression is not directly explained. It is reasonably certain, however, that what is meant is that the employee is not barred of recovery for injuries due to perils of which he has no knowledge and appreciation. It must constantly be borne in mind that liability is to be determined with a view to the *comparative knowledge* of the parties. Primarily the employer is bound to provide for the safety of his employees, and the employees have a right to rely upon the performance of this duty. They are not barred of recovery for injuries—or, in the terminology of the present topic, they do not 'assume the risk'—occasioned by the failure of the employer to perform his primary duty, unless they have actual or constructive knowledge of the dereliction and of the perils arising therefrom, and continue in the employment without protest or complaint."

Within these principles the question of whether Ames assumed the risk of appellant's negligence in not providing a safe place to work was one of fact and dependent upon whether Ames knew of the unsafe condition of the foundation, or, as a prudent man, ought to have known thereof. The burden of proving such actual or constructive knowledge was upon the appellant.

There is no evidence in the record tending towards such proof. There is, however, evidence in the record tending to prove the contrary. Ames' helper testified, "The floor looks good where we set the jacks." Appellant's evidence was adduced under the theory that there was no negligence on its part, and that the accident was caused by Ames' negligence. In fact, as previously stated, appellant admitted by its failure to deny in its answer the allegation of the complaint that the place where the tender was·jacked up appeared to be firm, sound, strong, and safe for work. In the absence of any evidence tending to charge Ames with knowledge of the defective condition of the foundation, no duty was imposed upon him to inspect the place for latent defects. He had the right under such circumstances to assume that appellant had furnished a safe place for him to work.

But appellant further insists that Ames assumed the risk when he rolled the truck so close to the tender and proceeded to work on the nut and bolt, when the work could have been done further back and out of danger. The fallacy of this argument lies·in the assumption that Ames assumed the risk of his own negligence in failing to properly jack up the tender, whereas the jury found that the falling of the tender was due to the negligence of the appellant in not maintaining a safe foundation. If the jury had not so found, it could have assessed no damages against appellant, for there was no other charge of negligence in the complaint. Under the facts of this case there was no other risk he could assume, and, as has been pointed out, it was not an obvious danger, and there was no evidence tending to charge him with any knowledge of it.

10. It is contended that the court erred in excluding

testimony offered by Edward McDermitt to the effect that on two prior occasions at the roundhouse tenders which had been raised by Ames fell from the jacks. The testimony excluded, condensed in narrative form, is as follows:

"Mr. Ames changed No. 2 wheels on truck 6 so he disconnected the tank and pulled it back and removed the entire truck, disconnected the tank from the engine, and the hostler pulled the tank back from the front end of the pit just inside of the door, and we set our jacks there just inside the door of the roundhouse, set the jacks and started jacking it up, and after we had the tank high enough to look underneath to see if it was high enough, and as I was looking underneath the tank and jack fell over, the truck was still under the tender, so the tender didn't fall to the ground in that instance, but the tender did fall off the jacks. I was working with Mr. Ames at the time, and he had charge of the work."

"The other occasion was in pit 2. On June 5th we had to change the No. 1 wheels, and disconnected the tank from the engine and pulled it back to almost the same place, but the jack was outside of the door of the roundhouse, and jacked the tank up and took the box plates off and went out to set the truck and get the wheels, and I don't know if we brought the wheels in with us or not, but when we got back into the roundhouse the tank was over against the door or post that holds the building up, and the double doors. The truck had not been taken entirely from under the tank, nor had the wheels been taken off, just the box plates. The tank was jacked up clear of the truck, 10 or 11 feet back of the pit. I can see no difference in the condition of the floor at the back at the place where these tanks were jacked up and fell, from the floor immediately surrounding the pit. We used the same method in jacking up tanks in both places, block the ground first and put our jacks on the blocks and then raise the tender, and the same process was followed in both places to get the trucks out."

This testimony was adduced on direct examination, and on cross-examination the following was elicited:

"Q. And as I understand you, the tank was raised and the jacks fell over, and it came down on the truck? A. Yes, sir.

"Q. When you commenced the work, that tank was not hitched to anything, was it? A. No, sir.

"Q. And it could roll on its wheels? A. It could.

"Q. And that is what it did? A. Yes, sir."

There was no error in the exclusion of this testimony. It was immaterial and irrelevant, because the incident disclosed by it had no tendency to impart knowledge to Ames that the foundation on which the tender in question was raised was unsafe. As said by this court in Hochshultz v. Potosi Zinc Co., 33 Nev. 198, 110 Pac. 713:

"Accidents from some other cause are not of any importance in this case."

These prior accidents were probably sufficient to impress Ames with notice that a tender raised by jacks and undetached from a locomotive might roll on its wheels and fall from the jacks, but certainly would have no tendency to warn him of the defect in the foundation, which the jury found was due to the negligence of the appellant.

Judgment affirmed.