## MUSSER *v.* LOS ANGELES & S. L. R. CO.

No. 2914

June 5, 1931. 299 P. 1020.

F. R. McNamee, Leo A. McNamee and Frank McNamee, Jr., for Appellant:

*Chas. Lee Horsey,* for Respondent:

## OPINION

By the Court, COLEMAN, C. J.:

This action was instituted to recover damages, pursuant to the federal employers' liability act (45 USCA. secs. 51–59), for injuries sustained in defendant company's yard at Las Vegas, Nevada. Judgment was rendered in favor of the plaintiff, from which and an order

denying a motion for a new trial an appeal has been taken. We will refer to the parties as plaintiff and defendant, as designated in the trial court.

The plaintiff, on September 5, 1927, in the course of his employment as a track motorcar operator, while starting on a trip from Las Vegas to Caliente, Nevada, ran his motorcar through an open switch within the yard limits of the defendant at Las Vegas. The motorcar was derailed, resulting in an injury to plaintiff's ankle, known as a Pott's fracture.

On the morning mentioned the plaintiff took his car from its shed and ran it up in front of the defendant's dining room, when he observed a freight train pulling out, going in the direction of Caliente, and, preferring not to trail it, decided to have his breakfast before taking his departure. In due time he started his motorcar and proceeded to adjust the carburetor while the car was moving, and it was while thus engaged, or immediately thereafter, that the plaintiff was injured.

The switch in question had been left open by the train crew of the freight mentioned, at the suggestion of the head brakeman of another freight train which was soon to follow, so that said first freight could proceed without stopping to close the switch and the second freight could proceed through the switch without stopping to open it.

Prior to the accident the defendant had promulgated certain rules relative to the operation of engines, trains, and track motorcars, which were in force at the time of the accident, and introduced in evidence upon the trial.

The theory of the plaintiff is that defendant was negligent in leaving the switch open, which resulted in his injuries. The defendant in its answer denied the allegations of the complaint alleging negligence on its part, and affirmatively pleaded a release; that the plaintiff was guilty of contributory negligence, and also that he assumed the risk.

In support of its defenses of contributory negligence and assumed risk, defendant pleaded that the switch in question was plainly marked and guarded by a red target on the switch stand, thereby giving warning that

it was open; that said target was visible for more than 1,000 feet and could have been seen by the plaintiff; and that his failure to observe that the switch was open was due to his carelessness and negligence. It also pleaded certain of its rules, which we may have occasion to refer to.

As grounds for reversing the judgment and order appealed from defendant relies chiefly upon alleged errors of law committed by the trial court.

It is contended by defendant that the court erred in giving instructions 1 and 2. Counsel quote in their brief the portion of the instructions mentioned to which they take exception, as follows:

" * * * The law imposes upon an employer the legal duty to furnish his or its employees a reasonably safe place to work and to provide reasonably safe methods of operation. * * * and if you find * * * that the main line switch was left open and was not left in charge of a trainman of a following train, within the meaning of Rule 104 of Defendant's rules of its transportation department, or left in charge of such trainmen, he failed to perform his duty by not remaining at or sufficiently near such main line switch to enable him to close the same, or do such other act as may be necessary to avert danger to human life or limb, then the leaving of such main switch open, under such circumstances constitutes a failure to furnish a reasonably safe place to work."

" * * * The promulgation and adoption of such rule recognizes its necessity, and if later the defendant corporation permitted or acquiesced in repeated violations of such rule, such acquiescence by it in such violation would not relieve the defendant of its primary duty under the law to furnish its employees a safe place to work. * * * You are instructed that notwithstanding it may have been a custom to violate such rule the primary duty imposed by the law of furnishing a safe place to work would remain in full force and effect and could not be changed by custom nor by any rule of the defendant attempting to modify or lessen the degree of

care required to furnish such safe place to work, as required by law. * * * "

It is said that these instructions are erroneous, in that they instruct the jury that it was the absolute duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, instead of charging the jury that it was the duty of the defendant to use reasonable care to furnish the plaintiff a reasonably safe place in which to work, having due regard to the circumstances. Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; Baltimore & O. S. W. R. Co. v. Carroll, 280 U. S. 491, 50 S. Ct. 182, 74 L. Ed. 566.

It is also contended by appellant that the latter portion of instruction 1, dealing with the leaving of a switch open and not leaving it in charge of a trainman of a following train, within the meaning of rule 104, is erroneous.

It is generally held to be the duty of the master to furnish his servant reasonably safe instrumentalities with which, and place wherein, to work (39 C. J. 308), and such has been accepted as the correct rule in this state, except as to cases coming within the federal employers' liability act. Burch v. Southern Pacific Co., 32 Nev. 75, 104 P. 225, Ann. Cas. 1912B, 1166; Peterson v. Pittsburg Silver Peak G. M. Co., 37 Nev. 117, 140 P. 519. A different rule is recognized, however, in Ames v. Western Pacific R. Co., 48 Nev. 78, 227 P. 1009, where it was held that it is the duty of the master, operating under the act mentioned, to see that "ordinary" care and prudence are exercised to the end that reasonably safe appliances and a reasonably safe place in which the servant is to work are furnished, having due regard to the circumstances. However, in the late case of Baltimore & Ohio S. W. R. Co. v. Carroll, 280 U. S. 491, 50 S. Ct. 182, 74 L. Ed. 566, and in Missouri P. R. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351, the supreme court of the United States held that the employer, being a railroad company operating under the federal employers'

liability act, is liable only for the exercise of "reasonable" care in the furnishing of reasonably safe appliances and place in which to work, having due regard to the circumstances.

Counsel for plaintiff concedes that the instruction is erroneous, but contends that such error was not prejudicial.

It is further contended that the court in instruction No. 1 told the jury, in effect, that regardless of whether defendant's rule No. 104 applied only outside of the terminal yards of defendant, as contended by it, and regardless of whether a reasonable and prudent person ordinarily under the circumstances would have left the switch open, and regardless of whether rule 104 was promulgated only for the protection and guidance of trains and trainmen, and not for the protection of the operators of motorcars, the defendant was guilty of negligence because the switch was left open.

Counsel for the defendant say that the purpose of this instruction was to make the defendant an insurer of plaintiff's safety and a guarantor of the safety of the place of work, regardless of the degree of care used by the defendant in marking the danger by the red signal board (target) on the switch stand, or the degree of care used by the trainmen of the following train in whose charge said switch was left.

We are unable to accept the contention made. Rule 104 reads:

"Switches must be left in proper position after having been used. Conductors are responsible for positions of switches used by them and their trainmen, except where switch tenders are stationed, but, when practicable, the enginemen must see that the switches nearest the engine are properly set.

"A switch must not be left open for a following train unless in charge of a trainman of such train."

The rule quoted is the only one, so far as appears, which pertains to the leaving open of a switch. It states the conditions upon which a switch may be left open and the precautions to be taken when one is left

open. We do not think the construction and operation of the red target properly plays a part in this connection. It was put in operation as a signal or warning to employees, and if it plays a part in this case it is upon another theory, the defense of contributory negligence, or assumed risk.

It is also contended by the defendant in this connection that rule 104 has no application inside of yard limits, where plaintiff was injured.

■■ It is the general rule that when a rule is not ambiguous its construction is a question for the court, but when it is ambiguous it is a question for the jury upon proper evidence. The court heard evidence on this point, pro and con, and we think it was a question for the jury.

■ Instruction No. 2 is erroneous, in that it in substance instructed the jury that it was the positive duty of the defendant to furnish its employees a safe place in which to work, instead of advising them that it was the duty of the defendant to use "reasonable" care to furnish its employees a reasonably safe place in which to work, having due regard to the circumstances.

It is further said that by "these instructions" (1 and 2) the court erred, in that they told the jury that the words of rule 104 to the effect that an open switch must be left in charge of a trainman means that such trainman must remain sufficiently near the switch to enable him to operate it to prevent danger to life and limb, thereby taking from the jury its duty of determining whether the leaving of said switch open in the manner and under the circumstances under which it was left open constituted negligence.

■ There is no contention that the rules in question, or either of them, are ambiguous upon the point in question, nor is it contended that any evidence was offered to aid the jury in interpreting the rules so far as this phase of the case is concerned. In this situation it was proper for the court to construe the rules as to the question suggested. We think it did not err in its construction.

It is next contended that instruction No. 3 is a definition of negligence and not of contributory negligence; that it is misleading, in that it confuses contributory negligence with simple negligence and assumption of risk.

The court instructed the jury, so far as is necessary to state, as follows: "The jury are further instructed that contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use."

The instruction then goes on to state that one of the defenses pleaded by the defendant is that plaintiff was guilty of contributory negligence, quoting the acts which defendant pleaded as constituting the defense of contributory negligence, among other things rule 1808 of the defendant, which reads: "Track Cars. Adjustments must not be made to engine or car while the car is moving, except that carburetor may be adjusted, providing sharp look-out is kept ahead and there is no hazard of accident."

The instruction concludes its recital of the defenses as follows: "That the injury sustained by plaintiff as alleged in said amended complaint was without any fault whatever on the part of said defendant or any of its other employees and that the carelessness and negligence of the plaintiff as herein above set forth was the sole and proximate cause thereof."

The instruction then concludes with directions to the jury as to its application to the facts, without further defining contributory negligence.

■ The instruction does not define contributory negligence correctly. In fact, it does not purport to do so. The instruction says that contributory negligence is "sometimes defined," without giving a definition. Courts should in such cases define contributory negligence, and leave to the jury the application of the facts, as found by them, to the law as given by the court.

■ Contributory negligence is such an act, or omission of precaution, on the part of the plaintiff, amounting in the circumstances to such want of ordinary care as,

taken in connection with the negligent act or omission of precaution on the part of the defendant, proximately contributes to the injury complained of.

■ As we read the instruction, it did not correctly inform the jury of the essential fact which they should find before they could say that the plaintiff was not guilty of contributory negligence.

However, we do not think the defendant was prejudiced in this particular, in view of the answers by the jury to specific questions, to the effect that the injury received by the plaintiff was due to some extent to the negligence of the plaintiff, and its finding that he sustained damage in the sum of $20,000, and the reduction of the verdict to $15,000.

In view of the matter pleaded as constituting contributory negligence we cannot say that the instruction was prejudicial, since it was based upon the defense pleaded.

Defendant contends that instruction No. 4 is erroneous in several respects. The chief contention is that the court in this instruction assumes that the defendant, by leaving the switch open, was guilty of negligence. We do not think the contention stated is well founded. That portion of the instruction down to the semicolon states a general proposition of law, followed by a statement to the effect that the plaintiff was not guilty of contributory negligence if the plaintiff did not know of the existence of the open switch, and that an ordinarily careful person in plaintiff's situation would not have observed the existing conditions. The court could not give all of the law of this case in one instruction, and sought in the instruction in question to tell the jury that under certain conditions contributory negligence could not be imputed to the plaintiff. Nor do we think this instruction assumes the plaintiff was adjusting the carburetor at the time of the accident, as contended, nor at any specific time.

■ We do not think instruction No. 4 confuses the defense of contributory negligence with that of assumed risk. Theoretically, at least, there is a clear distinction

between the two defenses. The one arises out of a tort and presupposes negligence on the part of the defendant coupled with the negligence of the plaintiff which contributes proximately to the injury. Assumption of risk, on the other hand, arises out of an implied contract, and is governed in cases of this kind by the principles stated by us in Ames v. Western Pacific R. Co., 48 Nev. 78, 227 P. 1009. Following the case just cited, we are clearly of the opinion that there can be no confusion arising out of the instruction in question.

 It is contended, and we think correctly, that the court erred in the matter of instruction 12, requested by the defendant. This instruction was marked by the court as "Not given," and yet it read it to the jury and handed it, with the instructions admittedly given, to the jury. It is said that since the instruction was one proper to be given the court erred in marking it "Not given." The instruction reads: "You are instructed that the plaintiff while in the employment of the defendant assumed as a matter of law all of the risks of his employment, and if you believe from the evidence that the plaintiff's injury grew out of risks that were ordinarily incident to his employment as a track motorcar operator, then your verdict should be for the defendant, but you are further instructed in this connection that by the use of the expression 'A Risk Ordinarily Incident to the Employment' is meant a risk of injury that does not arise or grow out of an act of negligence on the part of the defendant or its employees, and that whenever a risk is created by an act of negligence on the part of the defendant or its employees this is not a risk ordinarily incident to the employment. If, however, the plaintiff knows of such risk created by an act of negligence of the defendant or its employees, or if the risk and danger are so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom, then the plaintiff assumes such risk arising from the negligent act of the defendant or its employees."

We think this instruction correctly states the law.

The supreme court of the United States, in Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 566, 60 L. Ed. 1016, states the controlling rule to be: " * * * According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

The same court, in Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 622, 60 L. Ed. 1102, states, however: "The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence. * * * Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable not to the method, but to negligence in pursuing it."

The real question is whether or not the defendant was injured by the instruction being marked "Not given." It is not contended by the plaintiff that the court gave any other instruction relative to assumption of risk, hence it was proper that the court give the instruction.

In the case of Terra Haute & I. R. R. Co. v. Hybarger, 67 Ill. App. 480, it was held that the court committed reversible error in such circumstances. The court in that case said:

"Another objection urged is that the court marked as refused an instruction asked by defendant and read it to the jury, and that the instruction so read by the court and so marked refused was taken by the jury with the other instructions which were given. The instruction referred to was upon an important branch of the case—the duty of the plaintiff to exercise due care in approaching the crossing, and it is not denied that it correctly stated the law upon the point. So the question

is, what should be said of this, probably inadvertent, action of the court in marking as refused a correct proposition of law and giving it so marked to the jury. The other instructions taken by the jury were all marked given, and if the jury took the trouble to examine the instructions they must have discovered that while the others were marked given, this was marked refused, and it is presumable, at least, that they understood the court did not approve of this instruction. * * *

"It is impossible to say that the case of the defendant was not prejudiced by this action of the court. It could not be so said unless it were known that the jury did not discover that the instruction was so marked. This is not known. The judgment will be reversed and the cause remanded."

See, also, Delisky v. Leonard, 189 App. Div. 623, 179 N. Y. S. 112.

It is next contended that the verdict is excessive. We think we should be controlled in disposing of this contention by what the court said in Forrester v. S. P. Co., 36 Nev. 247, 299, 134 P. 753, 136 P. 705, 48 L. R. A. (N. S.) 1.

The next assigned error which we will consider is the one relative to instructions 7 and 8 concerning an alleged release of the defendant from liability as a result of the injuries received.

The release in question was obtained either on the day the injuries were received or on the following day, and while the plaintiff was still suffering great pain from his injuries. The instructions in question are as follows:

"Instruction No. 7. You are hereby further instructed that if an injured employee is induced to sign a paper purporting to be a release of the right to claim damages for personal injuries, and when he signed same he was suffering such physical pain and mental distress as a result of such injuries as to render it probable that he acted without deliberation and that he was then incapable of understanding the character of the instrument and the consequences of signing same, such instrument should be treated as inoperative and void.

"Therefore, if in this case you find from the evidence

that the plaintiff on the 5th day of September, 1927, or on the 6th day of September, 1927, did sign a paper which purports to be a release of the right to claim damages for personal injuries under circumstances such as above related, and you believe from the evidence that he did not sufficiently understand the character of such instrument and the consequences of signing same to the extent as to enable him really to consent to the terms of such instrument or knowingly to enter into such contract, then under such circumstances, the signing of such instrument should be treated as absolutely void and of no effect whatsoever.

"Instruction No. 8. The Court hereby further instructs the jurors that in the case now on trial, if you believe from the evidence that a paper was signed by the plaintiff purporting to be a release of defendant from all liability for negligence for having caused the injuries to the plaintiff that are the basis for plaintiff's alleged cause of action for damages in this case, such purported release would be null, void and of no effect, if you find from the evidence either:

"1. That no valuable consideration was given by the defendant for such release; or

"2. That plaintiff was as a proximate result of his injuries in such condition of mind and body when such purported release was signed by him that it is not probable that he understood the nature or effect of the instrument he signed; or

"3. That plaintiff did not understand when signing such release the nature or character of the paper or instrument he was signing and did not intend or consent to settle or release any cause of action or liability which he might have against the defendant corporation, and that, therefore, there was no reality of consent to his act."

 While we think it a reprehensible practice for individuals, copartnerships, associations, or corporations to encourage their agents to endeavor to procure from an employee a release from liability while suffering from injuries received while in such employment and

while experiencing mental or bodily pain, or both, and while such an employee is burdened with the anxieties of raising a family, the vicissitudes of life, and the problems accompanying old age, and that such conduct is a circumstance indicating its lack of due regard for the injured one and those dependent upon him, yet if a voluntary release is obtained without the semblance of imposition, for a valuable consideration, from one capable of fully appreciating its full force and effect, it is valid.

Coming now to a consideration of the instructions in question, we are of the opinion that instruction 8 is erroneous. It embodies three alternatives; one to the effect that if it is probable that the plaintiff at the time of executing the release did not understand its nature and effect it is void and of no effect. Such is not the law. The question is: Could he and did he at such time understand its nature and effect? This instruction is not only erroneous, but prejudicial.

The first paragraph of instruction 7 is erroneous and prejudicial for the same reason.

While it may be true that some of the errors pointed out were without prejudice, in view of the entire record we feel that the defendant was prejudiced, and that the judgment and order appealed from should be reversed, with directions to grant a new trial.

It is so ordered.